IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MARK EMERSON WILLEY,

      Petitioner,

vs.

JOHN FAYRAM, Warden,
Anamosa State Penitentiary,

      Respondent.

No. C10-0093

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *RELEVANT FACTS AND PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . 2
    *A.*    *The Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*    *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *C.*    *Post-Appeal Motion for Resentencing* . . . . . . . . . . . . . . . . . . . . 4
    *D.*    *Application for Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . 4
    *E.*    *Petition for Writ of Habeas Corpus* . . . . . . . . . . . . . . . . . . . . . 5

III.   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A.*    *Double Jeopardy — Count I* . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B.*    *Double Jeopardy — Count III* . . . . . . . . . . . . . . . . . . . . . . . . 12
    *C.*    *Due Process — Count II* . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    *D.*    *Due Process — Dangerous Weapon* . . . . . . . . . . . . . . . . . . . . . 22
    *E.*    *Due Process — Misstatement of Law* . . . . . . . . . . . . . . . . . . . . 24
    *F.*    *Due Process — Improper Instructions* . . . . . . . . . . . . . . . . . . . 27
    *G.*    *Ineffective Assistance of Counsel — Hearsay* . . . . . . . . . . . . . . . 28
    *H.*    *Ineffective Assistance of Counsel — Self Defense* . . . . . . . . . . . . 33
    *I.*    *Ineffective Assistance of Counsel — Discovery* . . . . . . . . . . . . . . 36

V.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

VI.  *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## I. INTRODUCTION

On October 5, 2010, after receiving permission to proceed *in forma pauperis*, Petitioner Mark Emerson Willey filed a Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket number 4). Respondent John Fayram filed an Answer (docket number 11) on November 5, 2010. The matter has been fully briefed, and on July 25, 2013 it was referred to me for a report and recommendation.

## II. RELEVANT FACTS AND PROCEEDINGS

### A. The Trial

On April 21, 2006, Willey was charged in the Iowa District Court for Jackson County with attempt to commit murder (Count I), burglary in the first degree (Count II), and willful injury (Count III). The charges arise from an incident on April 13, 2006, when Willey's sister, Emelie Harmon, was stabbed repeatedly. The facts were summarized by the Iowa Court of Appeals as follows:

> Willey's sister, Emelie Harmon, ended her shift at work at nine o'clock in the morning and walked home. Upon arriving home, she unlocked and opened the back doors, and stood in the doorway trying to coax her cat into the house. As Harmon was standing in the doorway, Willey jumped out of the butler's pantry in the kitchen and rushed at Harmon, pointing a stun gun towards her head. Harmon attempted to flee but was attacked by Willey on the patio outside the back door. Willey stabbed Harmon multiple times, covered her with a tarp, then took her keys and locked her house. Harmon made her way to the street where a motorist stopped to assist. After being driven by ambulance to a nearby emergency room, Harmon was taken by air ambulance to the University Hospital in Iowa City. Shortly after the incident occurred, Willey was arrested.

2

> He had a knife in his pocket and was carrying a bag that
> contained a stun gun, Harmon's keys, a screwdriver, a pry
> bar, rope, plastic wrap, and other incriminating items. Willey
> also had multiple blood stains on his clothes.

*State v. Willey*, 741 N.W.2d 822 (Table), 2007 WL 2712064 at *1 (Iowa App. 2007).

Following a change of venue, the matter came on for trial on July 10, 2006. On July 14, the jury found Willey guilty of burglary in the first degree (Count II) and willful injury (Count III). Regarding the charge of attempted murder (Count I), the jury found Willey guilty of the lesser included offense of assault with intent to inflict serious injury.

Willey was sentenced on July 28, 2006. The parties agreed that the offense of assault with intent to inflict serious injury (Count I) merged with the charge of willful injury (Count III) for purposes of sentencing. Willey was sentenced to serve an indeterminate term not to exceed 25 years for burglary in the first degree (Iowa Code § 713.3) and an indeterminate term not to exceed ten years for willful injury causing serious injury (Iowa Code § 708.4(1)), with the sentences to be served consecutively.

### B. Direct Appeal

Willie appealed the judgment and sentence. In his appeal brief, Willey's counsel identified three issues for review: First, whether there was sufficient evidence to support the burglary and willful injury convictions; second, whether the trial court erred in failing to give an instruction on self-defense; and third, whether the trial court erred in responding to a question submitted by the jury. Willey filed a *pro se* brief, adding two additional issues: whether "the prosecutor erred in impermissibly pyramiding Counts I and III," and whether "the district court erred in seating a tainted jury." In a *pro se* reply brief, Willey also argued the willful injury charge should have merged into the burglary charge.

On September 19, 2007, the Iowa Court of Appeals affirmed Willey's convictions and sentence. The Court concluded that sufficient evidence supported the jury's findings on both the burglary and willful injury charges. The Court also concluded that the district

court did not err in refusing to submit a self-defense, or justification, instruction. While the Court also referred to Willey's arguments that the trial court erred (1) in responding to a question by the jury, (2) by "impermissibly pyramiding Counts I and III," and (3) by seating a tainted jury, the Court concluded that error was either waived or not preserved on these additional arguments. The Court further concluded that "even if error had been preserved, we find them to be without merit."[1] Willey's *pro se* request for further review by the Iowa Supreme Court was denied. Procedendo issued on November 20, 2007.

### C. Post-Appeal Motion for Resentencing

On December 24, 2007, Willey filed a "Motion to Correct Void and Illegal Sentence" in the district court. Willey asserted the burglary (Count II) and willful injury (Count III) convictions should have merged for purposes of sentencing. Willey noted that the Iowa Court of Appeals "failed to address this issue."[2] On January 11, 2008, the district court summarily denied Willey's motion for resentencing. Willey's motion to reconsider was summarily denied on January 25, 2008. Willey then appealed a second time.

On December 31, 2008, the Iowa Court of Appeals affirmed. The Court concluded that "it is possible to commit first-degree burglary under the 'intentionally inflicted bodily injury' alternative without also committing willful injury causing serious injury."[3] Accordingly, the Court concluded that the trial court was correct in refusing to merge the two charges for sentencing. Willey's *pro se* request for further review by the Iowa Supreme Court was denied. Procedendo issued on March 2, 2009.

---

[1] *State v. Willey*, 741 N.W.2d 822 (Table), 2007 WL 2712064 at *4 (Iowa App. 2007) ("Willey I").

[2] Willey raised this issue for the first time in a reply brief filed during his direct appeal.

[3] *State v. Willey*, 2008 WL 5412275 at *2 (Iowa App. 2008) ("Willey II").

4

## D. Application for Post-Conviction Relief

Meanwhile, on May 23, 2008, Willey filed an application for post-conviction relief in the district court. In his supporting brief, Willey raised issues of double jeopardy, due process, judicial misconduct, and ineffective assistance of both trial counsel and appellate counsel. The brief enumerated 22 "issues presented for review." Following a hearing, the district court filed an order on March 3, 2009, denying Willey's application for post-conviction relief. The Court identified and rejected each of Willey's 22 claims. Willey then appealed a third time.

On November 12, 2009, the Iowa Court of Appeals affirmed the district court's denial of Willey's application for post-conviction relief.[4] The Court found that many of the issues had been previously decided in Willey's first two appeals, and would not be reconsidered. Willey's claims of ineffective assistance of counsel were rejected. Willey's *pro se* request for further review by the Iowa Supreme Court was denied. Procedendo issued on January 11, 2010.

## E. Petition for Writ of Habeas Corpus

On October 5, 2010, Willey filed the instant motion for writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. In his petition, Willey asserts nine grounds for relief:

1. Double jeopardy — Count I. Willey claims that while the district court merged Counts I and III for sentencing, it improperly entered convictions on both counts in violation of the Fifth Amendment.

2. Double jeopardy — Count III. Willey asserts that his conviction and sentence for willful injury (Count III) should have been merged with his conviction for burglary (Count II).

3. Due process — Count II. Willey argues that because the assault occurred on the patio, rather than inside the house, he cannot be convicted of burglary.

_____

[4] *State v. Willey*, 777 N.W.2d 129 (Table), 2009 WL 3775154 (Iowa App. 2009) ("Willey III").

4. **Due process — dangerous weapon.** Willey argues that a stun gun is not a dangerous weapon and, therefore, there is not evidence to support a conviction for burglary in the first degree.

5. **Due process — misstatement of law.** Willey asserts that jury instruction number 47 improperly instructs the jury that only one person need be present for burglary in the first degree.

6. **Due process — improper instructions.** Willey argues the trial court "usurped" the function of the jury by twice instructing them that a burglary had been committed.

7. **Ineffective assistance of counsel — hearsay.** According to Willey, trial counsel was ineffective in failing to object to testimony by DCI agent Matt George.

8. **Ineffective assistance of counsel — self defense.** Willey claims his trial counsel "lied her head off" when she advised the court that she recommended notice be given of self-defense, but defendant refused.

9. **Ineffective assistance of counsel — discovery.** Willey asserts his trial attorney failed to obtain appropriate discovery.

The Court will address each of the allegations in turn.

### III. STANDARD OF REVIEW

Before addressing Willey's claims, I pause to identify the standard of review given to applications for a writ of *habeas corpus* on behalf of a person in state court custody. Pursuant to 28 U.S.C. § 2254, a writ of *habeas corpus* shall not be granted with respect to any claim adjudicated on the merits in state court, unless it is established that the state court decision was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or the decision was based on an unreasonable determination of the facts.

> An application writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

6

> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1)    resulted in a decision that was contrary to, or
> >        involved an unreasonable application of, clearly
> >        established Federal law, as determined by the
> >        Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an
> >        unreasonable determination of the facts in light
> >        of the evidence presented in the State court
> >        proceeding.

28 U.S.C. § 2254(d).

In 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the federal *habeas corpus* statute, 28 U.S.C. § 2254, and "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399 (2000). In determining whether a petitioner is entitled to relief, the Court exercises "only limited and deferential review" of the underlying state court decision. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). AEDPA modified the federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 603 (2002).

Preliminarily, the Court must determine whether the Petitioner exhausted his remedies in state court. That is, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). *See also Baldwin v. Reese*, 541 U.S. 28, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("The state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

7

Regarding the merits of a claim, "federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, _____ U.S. _____, 131 S. Ct. 770, 785 (2011) (citation omitted). Thus, the statute identifies two types of erroneous decisions, those of law and those of fact. *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001).

A state court decision can be "contrary to" federal law in one of two ways: First, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405-06. An "unreasonable application" of federal law can also arise in two ways: First, if the state court correctly identifies the governing legal rule, but unreasonably applies it to the facts; and second, if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407. Federal *habeas corpus* relief may also be granted when the state court's decision "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). In this regard, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. *Id.*

In its recent *Harrington* opinion, the Court emphasized the limited authority which the federal court may exercise in a habeas proceeding brought by a state court prisoner.

8

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87.

## IV. DISCUSSION

In his petition for writ of *habeas corpus*, Willey asserts nine grounds for relief. I will address each claim in turn.

### A. Double Jeopardy — Count I

Willey first claims that he was improperly convicted of assault with intent to commit serious injury. Willey was initially charged with attempt to commit murder (Count I) and willful injury (Count III). At trial, the jury found Willey guilty of willful injury and, on the charge of attempted murder, found Willey guilty of the lesser included offense of assault with intent to commit serious injury. Willey claims that while the trial court correctly merged Counts I and III for sentencing, it improperly entered convictions on both Counts.

When the jury returned its verdict on July 14, 2006, the court entered an order on its "court calendar," noting the jury's verdicts. Following the sentencing hearing on July

28, 2006, the court memorialized its judgment and sentences in another court calendar entry.[5] The calendar entry of July 28 states, in part:

> Pursuant to defendant being convicted by jury trial of the lesser included offense under Count I, Assault with Intent to Inflict Serious Injury, in violation of Code Section 708.2(1); being convicted of Burglary in the First Degree under Count II, in violation of Section 713.3; and being convicted of Willful Injury Causing Serious Injury under Count III, in violation of Section 708.4(1), and as provided in Sections 902.3 and 902.9 of said Code, it is the JUDGMENT and SENTENCES of the Court that defendant be committed to the custody of the Director, Iowa Dept. of Corrections for a period not to exceed twenty-five years under Count II, and for a period not to exceed ten years under Count III, with credit on said sentences for time spent in custody to date. The sentence under Count I, assault with intent to inflict serious injury, merges into Count III.

Respondent's Appendix at 433 (docket number 25-3 at 39).

Iowa law prohibits a conviction for a public offense which is necessarily included in another public offense for which a person is convicted.[6] In affirming the district court's denial of Willey's application for post-conviction relief, the Iowa Court of Appeals found that "[w]hile Willey properly summarizes Iowa Code section 701.9, he misreads the

---

[5] Apparently, no separate judgment and sentence order was entered.

[6] Iowa Code § 701.9 states:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

10

district court's judgment entry."[7] The Court concluded that the district court "properly merged the convictions" and pronounced judgment only on the first-degree burglary and willful injury causing serious injury charges.

In resisting Willey's claim for relief on this ground, Respondent argues that Willey did not exhaust his remedies in state court when he failed to argue that the trial court's actions were contrary to clearly established Federal law. Respondent concedes that in Willey's application for post-conviction relief, he asserted that the failure to dismiss Count I constituted double jeopardy, in violation of the Fifth Amendment. In ruling on Willey's application for post-conviction relief, the district court found that "[t]he Constitution and the statue [sic] Iowa Code Section 701.9 cannot require dismissal, only merger and sentencing on the higher of the offenses, which the trial court did."[8] In appealing the adverse ruling on his application for post-conviction relief, Willey argued in his brief that "[t]he law of the land in scores of federal cases, some cited in the Iowa case Sinclair v. State, 669 N.W.2d 685 (2005), is that the conviction itself must be vacated and dismissed as well as the punishment."[9] As noted above, the Iowa Court of Appeals generally agreed with Willey's summarization of Iowa Code section 701.9, but found, as a factual matter, that Willey "misreads the district court's judgment entry," and the district court "properly merged the convictions." In his request for further review by the Iowa Supreme Court, Willey asserted that the Court of Appeals "falsely claims" that no conviction was entered in Count I. Willey argued that dismissal of the lesser included offense was required, citing Sinclair. Respondent argues that Willey's failure to fully articulate his federal claim in the request for further review is fatal under the exhaustion doctrine.

---

[7] Willey III at *3.

[8] Respondent's Appendix at 404 (docket number 25-3 at 10).

[9] The correct citation for Sinclair is 699 N.W.2d 685 (table), 2005 WL 1224762 (Iowa App. 2005).

11

I believe it is unnecessary to address this issue because Willey's claim fails on the merits. That is, the Iowa Court of Appeals agreed with Willey on the law. The Court concluded, however, that Willey was mistaken on the facts.

> While Willey properly summarizes Iowa Code section 701.9, he misreads the district court's judgment entry. The district court's calendar entry pronounces judgment only on the first-degree burglary and willful injury causing serious injury charges. The district court referred to the charge of assault with intent to inflict injury as a lesser-included offense and properly merged the convictions.

Willey III at *3, Respondent's Appendix at 412 (docket number 25-3 at 18).

Federal habeas relief may be granted if a decision "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Here, the Iowa Court of Appeals concluded, as a matter of fact, that the trial court "properly merged the convictions." "A determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Willey has the burden to rebut the presumption of correctness by clear and convincing evidence. *Id.* The Iowa Court of Appeals is clearly in a better position than this Court to make factual findings regarding the meaning of language used by Iowa trial judges in entering judgments and sentences. Willey has not met his burden of overcoming the presumption of correctness by clear and convincing evidence, and this Court should not interfere with the state court's finding of fact in this regard. Willey's first claim fails.

### B. Double Jeopardy — Count III

Next, Willey claims that he was improperly convicted and sentenced for both willful injury causing serious injury and burglary in the first degree. That is, Willey argues that willful injury causing serious injury is a lesser included offense of burglary in the first degree and, therefore, they should have been merged for sentencing. This issue was first addressed by the Iowa Court of Appeals in Willey II. The Court concluded that the trial

court properly refused to merge the two charges, finding that "it is possible to commit first-degree burglary under the 'intentionally inflicted bodily injury' alternative without also committing willful injury causing serious injury."[10]

Willey raised the issue again in his application for post-conviction relief. The district court denied Willey's claim, citing the Iowa Court of Appeals decision in Willey II. On appeal, the Iowa Court of Appeals noted that it had previously addressed and rejected Willey's statutory argument (Iowa Code section 701.9), and it would not reconsider that issue. In addressing Willey's Constitutional argument, the Court noted that "Iowa Code section 701.9 codifies the protection from cumulative punishment secured by the Double Jeopardy Clause of the United States Constitution." Willey III at *4 (quoting *State v. Daniels*, 588 N.W.2d 682, 683 (Iowa 1998)). The Court concluded that its prior analysis on the statutory claim "applies to the Constitutional claim as well." *Id.* While Willey's petition for habeas relief and supporting brief are imprecise, he apparently argues that the Iowa court's decision is "contrary to clearly established Federal law."

In his rambling brief, Respondent argues that because Willey did not raise the federal double jeopardy claim at the state trial court level, it is procedurally defaulted. It is true the issue was raised by Willey, and addressed by the state court, in a haphazard manner. At Willey's sentencing, the parties agreed that the offense of assault with intent to inflict serious injury (Count I) merged with the charge of willful injury (Count III). Willey did not argue at that time, however, that the willful injury charge also merged with the charge of burglary in the first degree (Count II). That issue was apparently first raised by Willey in a *reply* brief filed on his direct appeal. It was not addressed by the Iowa Court of Appeals in Willey I. In his request for further review, Willey raised the issue again. The Iowa Supreme Court denied the application for further review, without comment. Willey then raised the issue directly by filing a motion to correct an illegal

---

[10] Willey II at *2, Respondent's Appendix at 400 (docket number 25-3 at 6).

sentence. His motion cited Iowa's merger statute (Section 701.9), but did not raise a Fifth Amendment double jeopardy argument. The district court denied the motion summarily. On appeal, Willey's brief — written by an attorney acting on his behalf — clearly asserts a Fifth Amendment argument. In a "motion to strike" filed with the Supreme Court, Willey argued that his attorney was "grossly incompetent" by raising the Constitutional double jeopardy issue, arguing that it "directs attention away from the true issues." The Supreme Court denied Willey's motion to strike, noting that he could file a *pro se* supplemental brief. In affirming the district court, the Iowa Court of Appeals in Willey II addressed only the statutory argument. By the time he was appealing in the post-conviction action, however, Willey was chastising the district court for failing to address the Constitutional double jeopardy argument. The Court of Appeals in Willey III concluded that the analysis under Iowa Code section 701.9 and the Double Jeopardy Clause of the Fifth Amendment would be the same.

Before a claim may be considered by a federal court on an application for writ of *habeas corpus*, it must have been raised and decided by the state court. *Baldwin*, 541 U.S. at 29 ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies."). That is, 28 U.S.C. § 2254(c) requires "that state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan*, 526 U.S. at 844 (emphasis in original). Despite the untidy way that these issues were raised and addressed in the state court, I believe the exhaustion requirement has been met.

Turning to the merits of the claim, the double jeopardy clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Among other things, the double jeopardy clause provides "protection against multiple punishments" for the same offense. *Garrett v. United States*, 471 U.S. 773, 777 (1985). In this regard, "the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature

14

intended." *Id.* at 793 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). The double jeopardy provisions of the Fifth Amendment apply to the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

Iowa Code section 701.9 provides that a person may not be convicted of an offense "which is necessarily included" in another offense. This statute codifies the double jeopardy protection against cumulative punishments. *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). If the legislature *intended* double punishment, however, then the double jeopardy clause is not violated and merger is not required. *Id.* In Willey II, the Iowa Court of Appeals examined the crimes of willful injury causing serious injury and first degree burglary, and concluded that one was not "necessarily included" in the other, and therefore section 701.9 did not require a merger. In Willey III, the Court found that because section 701.9 codifies the protection from cumulative punishment secured by the double jeopardy clause, the Court's prior analysis in Willey II, addressing the statutory claim, "applies to the Constitutional claim as well."

The Supreme Court has stated that the double jeopardy clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Garrett*, 471 U.S. at 793; *Hunter*, 459 U.S. at 366. "Therefore, in deciding whether a punishment is constitutionally permissible under the Double Jeopardy Clause, we look to what punishment the legislature intended to impose." *Halliburton*, 539 N.W.2d at 344. To determine legislative intent, the Court must first decide "whether the crimes meet the legal elements test for lesser included offenses." *Id.* If they do, then the court must also consider whether the legislature intended multiple punishments for both offenses. *Id.* The legal elements test requires the Court to compare the elements of the two offenses "to determine whether it is possible to commit the greater offense without also committing the lesser offense." *Id. See also State v. Lindell*, 828 N.W.2d 1, 6 (Iowa 2013) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

In determining whether willful injury causing serious injury is a lesser included offense of burglary in the first degree, I find *State v. Hickman*, 623 N.W.2d 847 (Iowa 2001), to be instructive. There, Hickman was charged with first degree robbery, attempted murder, willful injury, and assault while participating in a felony. On the attempted murder charge, the jury found Hickman guilty of the lesser included offense of assault with intent to inflict serious injury. At sentencing, the district court merged the assault into the willful injury conviction. Hickman was then sentenced to an indeterminate 25-year prison term for first degree robbery and an indeterminate 10-year prison term for willful injury, with the sentences to run consecutively. *Id.* at 849. On appeal, Hickman argued that the willful injury charge should have merged with the first degree robbery charge at sentencing. The Court described the test to be applied in resolving this issue:

> The issue of whether, under the statute, willful injury is "necessarily included" in first-degree robbery is the principal issue on appeal. In determining whether a lesser offense is included in a greater one, we look to the elements of each and determine if the greater offense can be committed without also committing the lesser offense. If the greater offense cannot be committed without also committing the lesser offense, the lesser is included in the greater. We call this the "impossibility" test. (citation omitted) The so-called "elements" test for included offenses is applied only as an aid in using the impossibility test and is fully subsumed in it.

*Hickman*, 623 N.W.2d at 850. "If the greater offense is defined alternatively and the state charges both alternatives, the test for included offenses must be applied to each alternative." *Id.* at 851. In *Hickman*, the Court concluded that the words "purposefully inflicts . . . a serious injury" under the first-degree robbery statute and "intended to cause . . . serious injury" under the willful injury statute, "convey the same thought." *Id.* at 852. Accordingly, the two charges merged because "it is impossible to commit first-degree robbery under the purposefully-inflicts-serious-injury alternative without also committing willful injury." *Id.*

16

Turning back to the instant action, the jury was instructed that in order to convict Willey of burglary in the first degree, the state must prove:

1. On or about the thirteenth day of April, 2006, the defendant entered the home of Emelie Harmon.

2. The home was an occupied structure as defined in Instruction No. 32.

3. A person was present in the occupied structure.

4. The defendant did not have permission or authority to enter Emelie Harmon's home.

5. The defendant did so with the specific intent to commit an assault as defined in Instruction No. 33.

6.
   a. During the burglary, the defendant possessed a dangerous weapon as defined in Instruction No. 30; or

   b. During the burglary, the defendant intentionally inflicted bodily injury on Emelie Harmon as defined in Instruction No. 21.

Respondent's Appendix at 372 (docket number 25-2 at 373).

Regarding the charge of willful injury causing serious injury, the jury was instructed that the state must prove:

1. On or about the thirteenth day of April, 2006, the defendant stabbed Emelie Harmon.

2. The defendant specifically intended to cause a serious injury to Emelie Harmon.

3. Emelie Harmon sustained a serious injury as defined in Instruction No. 19.

Respondent's Appendix at 376 (docket number 25-2 at 377).

The aggravating circumstance which elevates burglary to burglary in the first degree — as relevant to this case — is a requirement that Willey "intentionally inflicted bodily injury" on the victim. *See* Iowa Code section 713.3(1)(c). To be convicted of willful

17

injury, however, Willey must have "specifically intended to cause a serious injury" to the victim. *See* Iowa Code section 708.4. It is possible for one to intentionally inflict bodily injury, without specifically intending to cause a serious injury.[11] In other words, there is a distinction between stabbing a person, resulting in bodily injury to the victim (thereby elevating burglary to burglary in the first degree), and *intending* to cause a serious injury (willful injury). Accordingly, burglary in the first degree *can* be committed without also committing willful injury. Therefore, willful injury does not meet the "impossibility" test, and is not a lesser included offense under these circumstances. *Hickman*, 623 N.W.2d at 850. This distinction was recognized by the Iowa Court of Appeals in Willey II:

> [A] defendant can intentionally inflict a bodily injury (physical pain, illness or impairment) in situations where neither the defendant's intent nor the victim's resulting harm rises to the level of a serious injury. Thus, it is possible for a defendant to commit first-degree burglary, which only requires intentional bodily injury, without also committing willful injury causing serious injury.

Willey II at *2, Respondent's Appendix at 400 (docket number 25-3 at 6).

A federal court is not bound by a state court's "conclusion that no double-jeopardy violation occurred, which is an issue of federal Constitutional law." *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010). "However, 'with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.* (quoting *Hunter*, 459 U.S. at 366). In determining whether the Iowa legislature intended cumulative punishment for these offenses, the Court is bound by the Iowa courts' interpretation of Iowa law. *Id.* Here, the Iowa courts have determined under the

---

[11] A "serious injury" is a bodily injury which creates a substantial risk of death, causes serious permanent disfigurement, or causes protracted loss or impairment of the function of any bodily member or organ. Iowa Code section 702.18(1)(b).

applicable Iowa statutes that first degree burglary and willful injury causing serious injury under these circumstances do not merge. Accordingly, there was no Constitutional double jeopardy violation.

> Since we are bound by the Iowa courts' determination that the Iowa legislature intended cumulative punishment for these offenses, we cannot reject the constitutional conclusion that follows: no double-jeopardy violation occurred in this case.

*Dodge*, 625 F.3d at 1019. *See also McCloud v. Deppisch*, 409 F.3d 869 (7th Cir. 2005) (denying a petition for *habeas corpus* based on a double-jeopardy multiple-punishment claim, because the state court had held that the legislature intended cumulative punishment, and a federal *habeas* court has no power to review this state-law conclusion) (cited with approval in *Dodge*).

Because the state court determined willful injury is not a lesser included offense to burglary in the first degree under the circumstances, and the crimes therefore call for separate punishments, neither Iowa Code section 701.9 nor the Double Jeopardy Clause of the United States Constitution requires their merger for sentencing.[12] Willey's second claim fails.

### C. Due Process — Count II

In his third ground for relief, Willey asserts the state court committed the "legal error of using continuing act to justify first degree burglary." While they are not models of clarity, Willey's petition and supporting brief apparently argue that the assault which elevates the burglary to burglary in the first degree did not occur within "an occupied structure." Willey claims that this constitutes a Fifth Amendment due process claim.[13]

---

[12] Because willful injury is not a lesser included offense, it is not necessary to address the second question of whether the legislature intended separate punishments for a lesser included offense. *Halliburton*, 539 N.W.2d at 344.

[13] Willey consistently refers to the Fifth Amendment when arguing due process. (continued...)

In support of his argument, Willey cites *State v. Pace*, 602 N.W.2d 764 (Iowa 1999). There, the Court discussed the definition of an "occupied structure," as set forth in Iowa Code section 702.12. The Court concluded "the sidewalk and step or stoop to the door of the house were not 'occupied structures' under the statute." *Id.* at 772. The Court noted, however, that appurtenances to buildings and structures which were intended for activity or storage, including patios, are considered occupied structures. *Id.* at 771 ("Outdoor furniture located on a deck or patio, or a bench located on a porch or stoop, would be indicia of the type of occupancy that could bring an appurtenance into the definition of an occupied structure.").

Whether the evidence was sufficient to support Willey's convictions for burglary in the first degree and willful injury were raised in Willey's direct appeal. In finding the evidence sufficient to support the burglary conviction, the Iowa Court of Appeals noted that the victim testified that she was standing in the doorway, with her left foot in the house, when she was initially confronted by Willey (who was inside the house). While there was some conflicting testimony as to whether her foot was *past* the threshold of her house, the Court concluded that "it is the jury's duty to evaluate the evidence and resolve any conflicts in the evidence." Willey I at *2, Respondent's Appendix at 397 (docket number 25-3 at 3). In Willey III, the Court addressed Willey's argument that "the first-degree burglary statute requires injury inside an occupied structure, which he asserts did not happen in this case because he caused the injuries on the patio." Willey III at *2, Respondent's Appendix at 411 (docket number 25-3 at 17). The Court did not decide Willey's claim directly, concluding that because Willey was armed with a dangerous

---

[13](...continued)
It is the Fourteenth Amendment, however, which prohibits any state from depriving a person of liberty without due process of law.

weapon (a stun gun) inside the residence, it was not necessary for the State to prove an injury occurred.[14] *Id.*

Willey argues that the state court erred in its application of the Iowa burglary statute. It is clear, however, that federal habeas relief may not be granted unless the state court decision was contrary to clearly established *federal* law. *See* 28 U.S.C. § 2254(d). "It is the task of the Supreme Court of Iowa, not this court, to determine and define the scope of the Iowa burglary statute." *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). Here, Willey attempts to convert the state court's interpretation of Iowa's burglary statute into a Constitutional due process claim.

The Due Process Clause of the Fourteenth Amendment requires that state action in criminal proceedings "be consistent with the fundamental principles of liberty and justice." *Buchalter v. People of State of New York*, 319 U.S. 427, 429 (1943). The Amendment does not, however, permit the federal court to interpret state constitutions or state laws. *Id.* The Fourteenth Amendment "leaves the states free to enforce their criminal laws under such statutory provisions and common law doctrines as they deem appropriate; and does not permit a party to bring to the test of a decision in this court every ruling made in the course of a trial in a state court." *Id.* at 429-30. *See also Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

The United States Supreme Court has held repeatedly that federal habeas relief is not available for an error of state law, and the federal Due Process Clause does not require a determination of whether the state has correctly applied state law. *Swarthout v. Cooke*, _____ U.S. _____, 131 S. Ct. 859, 861 (2011). *See also Estelle v. McGuire*, 502 U.S.

---

[14] Whether the state court properly instructed on the stun gun is Willey's fourth ground for relief and will be addressed below.

62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("'A mere error of state law,' we have noted, 'is not a denial of due process.'") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982)).

While the due process clause requires fair procedures in protecting a person's liberty interest, the federal court's review is limited to whether those procedures were fairly followed. *Swarthout*, 131 S. Ct. at 862. Here, Willey clearly received "due process" in the state court, including a trial, a post-conviction hearing, and three appeals. *Rivera*, 556 U.S. at 158 ("The Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.'") (quoting *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967)). Furthermore, even *if* the state court improperly applied the Iowa burglary statute to these circumstances (and I make no judgment in that regard), a mere error of state law is not a denial of due process. *Id.* Willey's due process claim fails.

### D. Due Process — Dangerous Weapon

In his fourth ground for relief, Willey claims that he "was wrongfully convicted of having a dangerous weapon." In his petition, Willey claims that this violated his Sixth Amendment rights. In his brief, Willey asserts that grounds 3-6 raise due process issues, but he also asserts a violation of the Sixth Amendment on this ground.

In Count II of the Trial Information, Willey was charged with the crime of burglary in the first degree. The trial information alleged that Willey "did enter the home of Emelie Harmon, while armed with a knife, with the intent to commit an assault therein and

22

intentionally inflicted a bodily injury on Emelie Harmon."[15]    The aggravating circumstances which elevate burglary to burglary in the first degree include "possession of a dangerous weapon" or "intentionally or recklessly inflict[ing] bodily injury on any person." Iowa Code section 713.3(1)(b) and (c). As set forth earlier in this Report, the jury was instructed that the sixth element of burglary in the first degree could be proved in the alternative. Willey argues that the blade on the knife which he used to stab Harmon was too short to be considered a "dangerous weapon," he was never charged with having a stun gun, and the stun gun was not a dangerous weapon in any event.[16]  Willey cited no legal authority in support of his claims.

In response, the Respondent questions whether Willey's Constitutional claims were ever raised in the state court. I believe it is unnecessary to resolve that issue, however, because Willey's claim clearly fails on the merits. Willey focuses on a portion of the definition of "dangerous weapon" found in the Iowa Code, which states that "dangerous weapons include *but are not limited to* any . . . knife having a blade exceeding five inches in length." (emphasis added) Iowa Code section 702.7. Willey ignores that part of the definition, however, which states that "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting

---

[15] Trial Information, Respondent's Appendix at 1 (docket number 25-2 at 1).

[16] Jury Instruction No. 30 defined "dangerous weapon":

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Jury Instruction No. 30, Respondent's Appendix at 375 (docket number 25-2 at 376).

death upon a human being, is a dangerous weapon." *Id.* Here, the trial information specifically alleged that Willey was armed with a knife. The jury could easily conclude that the knife was used in a way to indicate Willey intended to inflict death or serious injury, and that it was capable of inflicting death. Accordingly, the knife referred to in the Trial Information was a "dangerous weapon." In any event, the jury could easily find Willey intentionally inflicted bodily injury on the victim — the alternative aggravating factor.

Moreover, Willey's claim that a stun gun is not a dangerous weapon is simply wrong. In support of his argument, Willey cites *State v. Geier*, 484 N.W.2d 167 (Iowa 1992). In that case, however, the Court concluded that "there was sufficient evidence adduced at trial to convince a rational trier of fact that a stun gun is a 'dangerous weapon' under the aforementioned statutory definition." *Id.* at 172. I find no Sixth Amendment or Fourteenth Amendment violations. Willey's fourth claim fails.

### E. Due Process — Misstatement of Law

Next, Willey argues that the trial court improperly instructed the jury regarding first degree burglary, and improperly responded to a jury question asking for clarification. Willey asserts generally that this is a violation of "due process," but cites no authority in support of his argument.

In Iowa, a burglary is committed when a person enters an occupied structure with the intent to commit a felony, assault, or a theft therein. Iowa Code section 713.1. All burglary which is not burglary in the first degree or burglary in the second degree is burglary in the third degree. Iowa Code section 713.6A. If the burglary occurs in an occupied structure "in which one or more persons are present," but with no other aggravating circumstances, then it is burglary in the second degree. Iowa Code section 713.5. If one or more persons are present and one or more aggravating circumstances apply, however, then it is burglary in the first degree. Iowa Code section 713.3.

24

As set out in this Report above, the jury was instructed that in order to convict Willey of burglary in the first degree, the state must prove, among other things, that "[a] person was present in the occupied structure." During the jury's deliberation, it asked for clarification. The jury question stated:

1)     It is unclear whether the person need be present at the same time as the intruder.

2)     Define person.

3)     Could the "person" be the defendant?

Direct Appeal Appendix at 377.

The Appendix submitted in this case includes a transcript of the discussion which took place following receipt of the jury's questions.[17] The trial court informed Willey and counsel that "what I have done is merely recited the statute." Willey's attorney objected, arguing that the intent of the statute — as evidenced by the distinction between third degree burglary and first or second degree burglary — is that the person in the residence be someone "other than the perpetrator." Willey's attorney suggested that the third question be answered "no." The Court responded by saying that "[m]y concern about saying no is that I am then telling them that Mr. Willey is the person that was present because they said 'defendant.'"[18] Willey suggested that the instruction be modified to require "one or more other persons are present." The Court refused, stating "that's not what the statute says." Willey continued to object, stating that "it's obvious that the statute means some other person besides the burglar, but it's difficult to put in language to make them realize that."[19] Willey's attorney added that "I feel like sometimes when we have jury questions, all we do is cough back at them the same jury instruction they are not understanding, and

---

[17] Respondent's Appendix at 355-363 (docket number 25-2 at 356-364).

[18] *Id.* at 358 (docket number 25-2 at 359).

[19] *Id.* at 360 (docket number 25-2 at 361).

I'm wondering if there's a more direct way to answer that question without having another problem."[20] Willey then said that "I think your responses are fine."[21] The judge then asked Willey directly: "Do you agree with the proposed response?" Willey responded: "Yes, your honor."[22]

The trial court's response to the jury's questions were set forth in Instruction No. 47:

1.    In response to Question No. 1, regarding Element No. 3 of Instruction No. 22, one or more persons must be present during the perpetration of a burglary.

2.    In response to Question No. 2, please consider Instruction No. 5.

3.    In response to Question No. 3, regarding Instruction No. 22, a person commits burglary if, while perpetrating a burglary, in or upon an occupied structure, one or more persons are present.

Direct Appeal Appendix at 376. Regarding this issue and two other issues raised by Willey on direct appeal, the Iowa Court of Appeals concluded that "error was either waived or not preserved on these arguments. However, even if error had been preserved, we find them to be without merit."[23] When Willey raised the same issue in his application for post-conviction relief, both the trial court and the appellate court found that the

---

[20] *Id.* at 361 (docket number 25-2 at 362).

[21] *Id.*

[22] *Id.* at 361-362 (docket number 25-2 at 362-363).

[23] Willey I at *4, Respondent's Appendix at 398 (docket number 25-3 at 4).

arguments had been addressed on direct appeal and "we will not reconsider the same arguments."[24]

Willey attempts to make this a federal question by arguing that it violated his due process rights. As discussed above, the Fourteenth Amendment "leaves the states free to enforce their criminal laws under such statutory provisions and common law doctrines as they deem appropriate; and does not permit a party to bring to the test of a decision in this court every ruling made in the course of a trial in a state court." *Buchalter*, 319 U.S. at 429-30. A mere error of state law, even if one occurred, is not a denial of due process. *Gryger*, 334 U.S. at 731. This issue has been addressed by the state court on two occasions. Even *if* I disagreed with the state court's decisions on this issue, Willey has not been denied due process. It is not for the Court to second-guess the state court's decisions on state law. *Buchalter*, 319 U.S. at 429-30. In any event, I believe this issue was correctly decided by the state court. Willey clearly waived any possible error when he told the trial court that he agreed with the proposed response. There was no due process violation.

### F.  Due Process — Improper Instructions

In his sixth ground for relief, Willey asserts the trial court erred in instructing the jury on the elements of burglary. According to Willey, this constitutes a Fifth Amendment due process violation. In Instruction No. 22, the trial court instructed the jury on the elements of burglary in the first degree.[25] In identifying the aggravating circumstances which elevate the crime to burglary *in the first degree*, Element No. 6 states that "during the burglary" certain aggravating circumstances must be present. Willey argues that this is effectively instructing the jury that the burglary occurred.

---

[24] Willey III at *3, Respondent's Appendix at 412 (docket number 25-3 at 18).

[25] Instruction No. 22 is set out in this Report on page 17.

27

Willey's due process argument fails for the same reason that his earlier due process arguments fail. Even if the state court erred in applying state law, it is not a denial of due process, thereby providing a remedy in federal court. *Gryger*, 334 U.S. at 731. In any event, as clearly explained by the Iowa Court of Appeals in Willey's post-conviction relief action, the argument is without merit.

> Willey asserts the phrase "during the burglary" as used in the instruction instructs the jury that a burglary occurred. Willey also argues his trial and appellate counsel were ineffective for failing to object to this instruction at trial. Jury instructions are to be read as a whole, "not piecemeal or in artificial isolation." The jury instruction at issue informs the jury that the State must prove all six elements of burglary in the first degree. The instruction also instructs the jury that if the State fails to prove any of the elements, the defendant is not guilty of first-degree burglary. Thus, the court does not instruct the jury that a burglary has occurred. Rather, the phrase "during the burglary" is used to explain that the enhancing element must occur contemporaneously with the other five elements. The jury's receipt of this instruction did not prejudice Willey.

Willey III at \*3, Respondent's Appendix at 412 (docket number 25-3 at 18) (citation omitted). Accordingly, Willey's sixth claim fails.

### G. Ineffective Assistance of Counsel — Hearsay

For his seventh, eighth, and ninth grounds for relief, Willey transitions to claims of ineffective assistance of counsel.[26] Willey first argues that his attorney was ineffective "for not objecting to false hearsay." One of the issues at trial was whether Willey could have gained access to the victim's house. Agent Matt George of the Iowa Division of

---

[26] It should be noted that the trial court agreed to Willey's request for hybrid representation at trial. Specifically, the Court agreed to allow Willey to make his own opening statement and closing argument, and to cross-examine police witnesses and one other witness. After a lengthy discussion with the judge, Defendant signed a written "Limited Waiver of Counsel." As evidenced by the trial transcript, Willey played an active role in presenting his defense.

Criminal Investigation testified regarding his investigation. George testified, among other things, that he checked the condition of the windows in the house. Specifically, George testified that there were two unlocked windows in an upstairs bedroom and two open windows in a downstairs bedroom, although they were secured by screens. George also testified regarding a window containing an air conditioner.

> Q.    So it sounds like the least secure windows were those on the second floor?
>
> A.    Yes.
>
> Q.    With the exception of that one window that was open on the ground floor?
>
> A.    Right.
>
> Q.    And you said this was near the air conditioner?
>
> A.    Yes. There was one above the air conditioner. When I actually saw that window, it was closed. I was told it was open. There was a screen that secured that window as well. And then the other two windows on the south side of the house, they were open as well, so there were, I guess, three on the first floor.

Transcript of Trial, 390:13-25, Respondent's Appendix at 213 (docket number 25-2 at 213). Willey complains that George's testimony that he was told that one window was open constituted "false hearsay."

On cross-examination, Willey's attorney asked Agent George about the "three windows open in the downstairs area." George testified that "I was told that a window was open above the air-conditioning unit; however, when I got inside and took a picture of that window, it was actually closed."[27] Furthermore, George confirmed that "of the

---

[27] Transcript of Trial, 408:11-13, Respondent's Appendix at 229 (docket number 25-2 at 229).

three windows that were open, all were secured by screens."[28] In response to questioning by Willey's attorney, George also testified that all of the doors were locked and in order for investigators to enter the house, it was necessary to "slit a screen."[29]

In his application for post-conviction relief, Willey argued that his attorney's failure to assert a hearsay objection constituted ineffective assistance of counsel. The district court rejected the argument and the Iowa Court of Appeals affirmed. The Court noted that "[o]n cross-examination, Willey's counsel elicited testimony from the agent that, in fact, the window at issue was closed."[30] Accordingly, the Court concluded that "Willey cannot prove prejudice as required by *Strickland*."[31]

In the familiar case of *Strickland v. Washington*, 466 U.S. 668 (1984), the Court set forth the standard to be applied in determining whether a defendant is entitled to relief for ineffective assistance of counsel.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

---

[28] *Id.*, 408:14-16.

[29] *Id.*, 408:17-22.

[30] Willey III at *5, Respondent's Appendix at 414 (docket number 25-3 at 20).

[31] *Id.*

30

*Strickland*, 466 at 687. Thus, Willey must first show that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688. In this regard, the Court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. If Willey is able to meet the first test, then he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. *See also Cochran v. Dormire*, 701 F.3d 865, 869 (8th Cir. 2012).

It must be emphasized, however, that in considering a claim of ineffective assistance of counsel in a § 2254 habeas proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). This distinction was highlighted recently by the Court in *Harrington v. Richter*, _____ U.S. _____, 131 S. Ct. 770 (2011):

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams [v. Taylor, 529 U.S. 362]* at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 785 (Italics in original).

"The standards created by *Strickland* and section 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citing *Knowles*, 556 U.S. at _____, 129 S. Ct. at 1420). Therefore, when the habeas standard in § 2254(d) applies, the question is *not* whether counsel's actions were reasonable, it is instead whether the state court could have reasonably found that counsel satisfied *Strickland*'s deferential standard. *Id.*

Here, Willey fails both prongs of the *Strickland* test. While Willey's attorney *could* presumably have asked that a portion of Agent George's testimony be stricken as hearsay, she elected instead to pursue the matter on cross-examination. At that time, she effectively established that the window above the air conditioner was, in fact, closed; that the windows which were "open" were nonetheless secured by screens; that the doors of the house were locked; and, in fact, investigators found it necessary to break in. Counsel's performance on this issue was clearly "within the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In any event, it is not "reasonably probable" that the result of the trial would have been any different if Willey's counsel had timely objected to the hearsay testimony. During George's cross-examination, counsel clearly established that the window over the air conditioner was closed, and thoroughly addressed the difficulty of someone entering the house without permission. Clearly, there was a reasonable basis for the state court's determination that Willey had failed to establish ineffective assistance of counsel on this issue. Therefore, Willey's seventh claim fails.

## H.  Ineffective Assistance of Counsel — Self Defense

For his eighth ground of relief, Willey claims that his attorney was ineffective in failing to file a notice of self-defense, or justification.[32]  There is a factual dispute, however, regarding whether Willey intended to assert self-defense.  The issue was addressed by the trial judge on the morning of trial, prior to selecting a jury.

During a discussion regarding whether Willey would be permitted hybrid representation, Willey's counsel (Ms. Dalton) advised the court that she had discussed with Defendant "in detail" the defenses of diminished responsibility and justification. Ms. Dalton stated that "I don't believe Mark [Willey] has changed his mind on any of those particular issues," and confirmed that no notices of special defenses had been filed.[33] When asked whether he understood, Willey advised the court that "I want to argue self-defense, but other than that, I understand."[34]  Willey claimed that he told Dalton he intended to rely on self-defense.  Ms. Dalton advised the court, however, that she discussed the issue of whether to file a notice of self-defense, and "[t]hat was his decision and he chose not to, and now again he's telling me the opposite decision."[35]  In response, Willey told the judge "[t]hat was my whole defense.  I can't believe she's saying — never mentioned it.  I mean, it's the whole case."[36]  Ms. Dalton again confirmed to the court that after discussing the issue with Willey, she concluded that Willey "did not wish to

---

[32]  In Iowa, if a defendant intends to rely upon the defense of self-defense, the defendant must, within the time for filing pretrial motions, file written notice of such intention.  Iowa R. Crim. P. 2.11(11)(c).  However, the court may for good cause shown allow late filing of the notice.  *Id.*

[33]  Respondent's Appendix at 35 (docket number 25-2 at 35).

[34]  *Id.* at 36.

[35]  *Id.* at 39.

[36]  *Id.*

assert this special defense."[37] Willey responded: "Your Honor, I'm amazed. I'm absolutely amazed. She knew the whole case is self-defense. I can't believe she didn't give notice."[38] When asked whether he was waiving any conflict which he had with Ms. Dalton and "desiring to proceed today," Willey asked the judge "what will happen about justification self-defense?" The judge told Willey that "I will not give an advisory opinion on that issue."[39] According to the judge, "I will make a decision on that issue once the issue is raised and I'm required to make a decision. I am not at this time required to do so."[40] Willey then advised the court that "I would like to proceed today."[41]

At the conclusion of the trial, Willey asked for an instruction on justification. The State objected, noting that Willey didn't provide legal notice of his intent to rely on self-defense, and arguing further that "[t]here hasn't been a sufficient showing that he acted at all in self-defense."[42] Defendant argued that there was evidence in the record to support a finding that he "was reasonably fearful," and "I don't see how giving notice in this particular case would have changed the prosecution case one bit."[43] The trial judge reviewed the evidence introduced during the trial and concluded that "there is no basis upon which the trier of fact would find that Mr. Willey believed his assaultive actions were

---

[37] *Id.* at 40.

[38] *Id.*

[39] *Id.* at 55.

[40] *Id.* at 55-56.

[41] *Id.* at 56.

[42] *Id.* at 318.

[43] *Id.* at 321-322.

necessary to defend himself from the imminent use of unlawful force or harm."[44] Accordingly, the court refused to submit the self-defense or justification instruction, *not* because notice had not been given, but instead because the evidence did not support it.

Willey raised the issue as error in his direct appeal. In rejecting Willey's argument, the Iowa Court of Appeals noted that "[a]lthough the burden to disprove a justification defense rests with the State, the defendant bears the initial burden of demonstrating that the record contains substantial evidence to support the instruction."[45] The Court concluded that Willey did not present any evidence to suggest that self-defense was applicable, and therefore the district court did not err in declining to instruct the jury on self-defense. In his application for post-conviction relief, Willey argued generally that his attorney was ineffective in failing to establish a defense of justification. The trial court rejected the argument and the Iowa Court of Appeals affirmed. The Court noted it had previously concluded that the district court did not err in declining to instruct the jury on self-defense and, therefore, "[t]rial counsel was not ineffective for opting not to advance a justification defense for which there was no support in the record."[46]

As discussed previously in this Report, it is not for this Court to determine whether the state court erred in applying state law. *Gryger*, 334 U.S. at 731. Accordingly, I will not second-guess the state court on the issue of whether a justification instruction should have been given. On the issue of whether Willey's counsel was ineffective in failing to produce evidence to support a self-defense instruction, I believe the state court could reasonably conclude that Willey failed to meet the two-prong test of *Strickland*. Accordingly, Willey is not entitled to federal habeas relief, even *if* another judge may have

---

[44] *Id.* at 326.

[45] Willey I at *4, Respondent's Appendix at 398 (docket number 25-3 at 4).

[46] Willey III at *4, Respondent's Appendix at 413 (docket number 25-3 at 19).

reached a different decision. *Knowles*, 556 U.S. at 123. Therefore, Willey's eighth claim has no merit.

### I. Ineffective Assistance of Counsel — Discovery

In his final claim, Willey asserts ineffective assistance of counsel because the "trial judge said I was entitled to discovery I did not get." Willey misunderstands the judge's comment. In fact, the reference cited by Willey is to a requirement that a defendant *provide* discovery, not that he failed to receive permitted discovery.

Prior to trial, the judge engaged Willey in a lengthy colloquy regarding his request (made that morning) that he be permitted to represent himself during parts of the trial. Part of that discussion involved what witnesses would be called to testify. Among other things, Willey and his attorney addressed the issue of whether Agent Bill Kietzman of the Iowa Division of Criminal Investigation would be called as a witness. Defendant's counsel advised the Court that if Emelie Harmon was called as a witness by the State, and if her comments could be rebutted by information known by Kietzman, "then I will be listing Mr. Kietzman or I will be trying to subpoena Mr. Kietzman for his testimony."[47] In response, the judge stated: "That's not rebuttal. That would be in your case in chief. **There has to be discovery on the part of defendant in this case.**"[48] Willey seizes upon the last sentence in asserting that the "trial judge said I was entitled to discovery I did not get." Clearly, that was not the context of the judge's remarks.

In his brief, Willey abandons the issue of discovery and instead complains that his attorney failed to call Agent Kietzman as a witness.[49] Willey asserts, without any support

---

[47] Respondent's Appendix at 31 (docket number 25-2 at 31).

[48] *Id.* (emphasis added)

[49] It should be noted that while Agent Kietzman was not initially listed by defendant as a witness, the State advised the court that it would not object if defendant wished to call
(continued...)

in the record by affidavit or otherwise, that Kietzman "would have testified that Harmon framed the defendant for burglary." This issue was raised in Willey's application for post-conviction relief, and rejected by the Iowa Court of Appeals:

> Willey contends his trial counsel failed to present key witnesses in his defense. Specifically, Willey asserts his counsel should have presented evidence that he was framed, evidence that Harmon had no head injuries, and evidence that Harmon's loss of blood was not life-threatening. Willey failed to present evidence at the post-conviction hearing in support of his assertions. Further, in light of the overwhelming evidence discussed above, Willey cannot prove prejudice as required by *Strickland*.

*Willey III* at *5, Respondent's Appendix at 414 (docket number 25-3 at 20).

As discussed above, establishing ineffective assistance of counsel in a federal habeas proceeding following a state court conviction is "doubly" difficult. *Harrington*, 131 S. Ct. at 788. The question is not whether the state court's determination on this issue was correct, but instead whether the state court's determination was unreasonable. *Williams*, 529 U.S. at 410. In other words, if the state court reasonably concluded that Willey failed to meet the *Strickland* standard, then a federal court must deny relief on that ground, even if it may have reached a different conclusion. *Knowles*, 556 U.S. at 123. I cannot say that the state court's determination on this issue was unreasonable and, therefore, Willey's final claim of ineffective assistance of counsel fails.

## V. CONCLUSION

Willey seems to think that a federal court has the authority to second-guess state court decisions on state court issues willy nilly. It does not. The federal court does not sit as a super-appellate court, free to review a state court decision with which it disagrees. Instead, the Court exercises "only limited and deferential review" of the underlying state

---

[49](...continued)
Kietzman in his case-in-chief. Respondent's Appendix at 34 (docket number 25-2 at 34).

court decision. *Ryan*, 387 F.3d at 790. Federal habeas relief may only be granted if the state court's decision was contrary to federal law, involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts. *Harrington*, 131 S. Ct. at 785. *See also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"). For the reasons set for above, I believe Willey is not entitled to federal habeas relief. I also recommend that a certificate of appealability be denied.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the district court **DENY** Petitioner's application for a writ of *habeas corpus* and **DENY** a certificate of appealability.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this _15th_ day of August, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA